IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRETT PARKER and
D&B PARKER FARMS, L.L.C.,

                    Plaintiffs,

v.                                                    Case No. 6:15-cv-01204

FARM BUREAU PROPERTY & CASUALTY
INSURANCE COMPANY,

                    Defendant.

## MEMORANDUM AND ORDER

Plaintiffs claim that Farm Bureau breached the parties' insurance contract by failing to defend or provide coverage on a civil lawsuit against plaintiffs. The lawsuit accused plaintiffs of selling wheat seed in violation of the Plant Variety Protection Act (PVPA), 7 U.S.C. § 2321 *et seq.*, which gives patent-like protection to owners of certain plant varieties. Plaintiffs argue they were entitled to a defense and to coverage under a Business Injury Liability module in their Farm Bureau policy. Farm Bureau refused to provide a defense and denied coverage. The matter is now before the court on the parties' cross-motions for summary judgment.

### I. Uncontroverted Facts.

The court finds the following facts to be uncontroverted for purposes of summary judgment.

Brett and Dane Parker are brothers. They operate a farming business known as D&B Parker Farms, L.L.C. They are the sole members of the LLC. In about 2012, D&B

Parker Farms performed some harvesting work for Steve Hirt in Waterville. In exchange for this service, Hirt gave Brett Parker over 1,000 bushels of seed wheat. Hirt told him it contained a combination of varieties, including the Fuller variety.

After the 2013 planting season, D&B Parker Farms had some of the Hirt seed left over. Brett Parker decided to sell it. Rather than sell it to the local grain elevator, where he would only get $7 or $7.50 a bushel, Brett decided to sell it directly to other farmers, and he took out an ad in the farm magazine *Grass & Grain.* The ad stated: "SEED WHEAT for sale. 3 Way blend. Art, Fuller & 2137, cleaned." When Brett received a call in response to the ad, he informed the caller that he had already sold around 1,000 bushels of the seed wheat and that it was "certified and – probably be one year out." On October 23, 2013, Brett met with the caller and sold him 148 bushels of the seed wheat at $10 a bushel. He gave the buyer a hand-written receipt specifying that the seed contained "Art, Fuller, [and] 2137" varieties.

### *PVPA and the KWA Lawsuit.*

Under the PVPA, a certificate holder generally has the right for 20 years to exclude others from selling a protected variety, or from offering it for sale, or from reproducing it. 7 U.S.C. § 2483. It is an infringement of a certificate holder's rights for a person, without authority, "to sell or market the protected variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it." 7 U.S.C. § 2451(a). With certain exceptions, it is not an infringement for a person to save seed produced by the person from seed obtained, or descended from seed obtained, with authority of the certificate holder, and

to use it in the production of a crop on the farm of the person. § 2543. Nor is it an infringement to engage in a bona fide sale for other than reproductive purposes, made in channels usual for such purposes, of seed produced on a farm from seed obtained, or descended from seed obtained, by authority of the certificate holder. *Id.*

The Kansas State University Research Foundation (KSURF) obtained a PVPA certificate for Fuller wheat seed in 2008. The certificate is now held by the Kansas Wheat Alliance (KWA). Neither Brett, Dane, nor D&B has ever had a license to sell Fuller seed.

Two weeks after Brett sold the seed, an attorney sent him a letter on behalf of the KWA, informing him that the purchaser of the seed was actually a KWA investigator, and demanding $15,000 in compensation. The Parkers retained an attorney, who exchanged numerous letters with the KWA attorney. In March 2014, they reached an apparent settlement of $7,000, but Brett refused to provide the name of the person who sold him the wheat or the locations where the Parkers had planted Fuller seed, and the settlement fell through.

The KWA and KSURF filed suit against Brett Parker and D&B Parker Farms on April 4, 2014. The complaint alleged that the Parkers violated the PVPA by advertising, selling, and replanting the Fuller wheat seed on land they did not own, without authorization from the KWA or KSURF. It sought monetary damages, an injunction to prevent future infringement, treble damages for willful violations, and attorney's fees.

*Farm Bureau policy.*

D&B Farms had an insurance policy from Farm Bureau that was in effect from July 8, 2013, through July 8, 2014. Brett Parker, his wife Amanda, and D&B [Parker] Farms are the named insureds under the policy.

The policy included a Farm/Ranch and Personal Liability module that provided coverage for property damage and bodily injury caused by the Parkers during their farming operations (but specifically excluding business damages).  This module was added to the policy on or about April 24, 2009. D&B Parker Farms, LLC, was added as a named insured at that time.

On or about May 6, 2009, the Parkers submitted an application to add a Business Liability module to their policy for a rental dwelling. They had not previously had Business Liability insurance through Farm Bureau. The application lists the address for the rental property as 116 Vista Rd, Waterville, Kansas, and lists annual income of $3,600 from the rental. The Parkers acquired this rental property around April 10, 2009.

On May 8, 2009, Farm Bureau sent a bill to the Parkers for their insurance, which included the newly added business liability insurance. The May 8, 2009, bill lists "BUSINESS LIABILITY Rental Dwelling – 1 F[amily]" among the coverages purchased. The bill does not list any other business liability coverage. The bill lists "FARM/RANCH LIABILITY" among the coverages purchased. The Parkers paid the bill. Farm Bureau thereafter sent the Parkers bills at least annually (and sometimes quarterly) that similarly listed "BUSINESS LIABILITY Rental Dwelling – 1 F" among the coverages purchased and did not list any other business liability coverage. The

4

annual premium for the business liability coverage was about $15. Their total annual premium for all coverage was over $4,000. The Parkers paid all of the bills.

The Business Liability module of the policy states, "you have the following coverage only for the 'business' indicated by class in the Declarations…." The term "Business" was defined as "Trade, profession, occupation, enterprise or other activity engaged in for profit or compensation as shown on the declarations." Dkt. 84-10 at 52. The policy clarifies that "with respect to your 'business' indicated in the Declarations," the "insured" includes "You, but only for the conduct or your 'business,'" and "If you are a limited liability company, your members are also 'insureds,' but only for the conduct of your 'business.'"

The Business Liability module covers "damages" that result from "business injury" "caused by" an "occurrence" or "offense" to which the coverage applies. *Id.* at 35. (The quoted terms are all specifically defined in the policy.) The coverage applies only to "bodily injury," "property damage," or a "personal injury/advertising injury" "offense." "Property damage" means only "Physical injury to or destruction of tangible property." Dkt. 84-10 at 8. "Bodily injury" only applies to bodily harm, sickness or disease sustained by a person. *Id.* at 7.

The coverage for Personal Injury/Advertising injury applies to injury "caused by" one or more specified "'offenses': … D. Misappropriation of advertising ideas or style of doing business; [and] E. Infringement of copyright, title or slogan." It further provides: "F. The Intentional Acts Exclusion in the General Section does not apply to 'Personal Injury/Advertising Injury.'" Dkt. 84-10 at 55.

5

The first page of the Declarations, which is addressed to Brett Parker as "First Named Insured," lists D&B Farms, Amanda Parker, and Brett Parker as the Named Insureds. A "Summary of Coverage" immediately below that states: "Property/Liability Coverage" and gives a single, total annual premium:

This declarations is a part of the policy and shows the coverages that are provided during the specified policy period.

| Named Insured(s) | | |
|---|---|---|
| D&B FARMS | BRETT PARKER | |
| AMANDA PARKER | | |
| Summary of Coverage | | Annual Premium |
| Property/Liability Coverage .................................................................. | | $4,203.06 |
| Policy Discounts | | |
| Protective Devices | Dwelling Age | |

The second page of the Declarations begins with the following summary of coverages:

| Property/Liability | | |
|---|---|---|
| Coverage | Limits | Deductible |
| Bodily Injury Liability/Property Damage Liability | $500,000 each occurrence | |
| Medical Payments to Others | $1,000 each person/each occurrence | |
| Liability Loss Assessment | $1,000 each occurrence | |
| Livestock Collision | $5,000 per head | |
| Business Injury Liability | $500,000 each occurrence/offense | |
| | $1,000,000 aggregate | |
| Rental Dwelling - 1 Family (Residence Premises or Other) | | |
| Named Insured(s) | | |
| BRETT PARKER | | |
| Medical Payments to Others | $1,000 each person/each occurrence | |
| Fire Department Service Charge | $1,000 | No |
| Property Loss Assessment | $1,000 | No |

Below this, two separate "Insured Location[s]" are set forth – Brett and Amanda Parkers' residence and the dwelling at 116 Vista Rd. As to each one, the Declarations pages specify various elements of property damage coverage, coverage limits for those items, and applicable deductibles. A list of fourteen endorsements appears at the end of

the Declarations pages. The endorsements are identified only by a code comprised of letters and numbers. Nothing in the Declarations states specifically that D&B Farms has Farm/Ranch Liability coverage, although the code for that coverage appears in the list of endorsements, and a description of the coverage was contained within the policy itself.

The Business Liability module provides that if a suit for covered damages is brought against the insured, Farm Bureau will provide a defense at its own expense, but that the company has no duty to defend any suit to which the insurance does not apply.

*Refusal to defend and denial of coverage*.

Brett Parker reported the PVPA suit to Farm Bureau on June 26, 2014. Farm Bureau investigated and sent the Parkers a letter denying coverage on August 1, 2014. Farm Bureau thereafter declined to attend mediation between the parties to the litigation.

In December 2014, the Parkers, represented by their own counsel, entered into a non-confidential settlement agreement with the KWA and KSURF. Brett Parker admitted to infringement of PVPA certificates owned or licensed by KWA. Parker agreed to entry of a $200,000 consent judgment against him, but with the proviso that if he paid $60,000 within three years and did not violate the settlement agreement, he would not have to pay the remaining $140,000. Parker made the first $20,000 payment in 2014. A $200,000 consent judgment was entered against him on January 5, 2015.

**II. Summary Judgment Standards.**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the non-moving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**III. Construction of Insurance Policies.**

The parties agree that Kansas law governs this case. Under Kansas law, the court must consider the insurance policy as a whole and ascertain the intention of the parties from the language used. *Bussman v. Safeco Ins. of America*, 298 Kan. 700, 707, 317 P.3d 70 (2014) (citation omitted). The language of the policy is tested by what a reasonably prudent insured would understand it to mean, not by what the insurer intended it to mean. *Id.* (*citing Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, ¶ 3, 46 P.3d 1120 (2002)). To the extent the policy is ambiguous, the ambiguity is construed against the insurance company because "[w]here an insurer prepares its own contracts, it has a

8

duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer." *Bussman*, 298 Kan. at 707 (*quoting Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 858, 137 P.3d 486 (2006)).

**IV. Discussion.**

A. <u>Business Liability coverage</u>.[1] Farm Bureau argues there is no coverage under the Business Liability module because the policy states that the Parkers have such coverage "only for the 'business' indicated by class in the Declarations," and the portion of the Declarations where "Business Injury Liability" coverage is mentioned states underneath, "Rental Dwelling – 1 Family (Residence Premises or Other)," "Named Insured(s) BRETT PARKER," and "Medical Payments to Others $1,000 each person/occurrence."

If Farm Bureau's argument is that this layout can be construed as indicating – without explicitly stating – that Business Injury Liability coverage applies only to the Parkers' rental dwelling business, the court agrees that this is one reasonable construction. But it is not the only one. The layout of the Declarations is at least ambiguous, if not downright confusing. An insured examining the policy could not say with any degree of certainty whether D&B Farms had Business Injury Liability coverage. Looking at the Declarations and the remainder of the policy, it is simply unclear which coverages mentioned in the Declarations are provided for which insureds.

---

[1] Plaintiffs concede Farm Bureau's assertion that there is no coverage or potential coverage in this case under the Farm/Ranch and Personal liability modules of the policy. Dkt. 88 at 33-34.

The first page of the Declarations lists three named insureds - D&B Farms, Brett Parker, and Amanda Parker – with D&B Farms listed first. Absent an express limitation, one could infer that the coverages described in the Declarations apply to all businesses listed therein, including D&B Farms. The second page of the Declarations sets forth various elements of coverage with no apparent distinction between insureds. The rental dwelling is mentioned under a list of coverages, with Brett Parker specifically identified as the insured party for the dwelling, and coverage for medical payments to others listed under his name. All of this appears under the general heading of "Property/Liability." The import of the rental dwelling being listed several spaces below (and slightly indented from) "Business Injury Liability" is anyone's guess. There is no reference to a rental dwelling *business* anywhere in the listing. The itemization of the dwelling could be perceived as a separate item that identifies Brett Parker as the named insured for that building – which along with the Parker's residence was described elsewhere in the Declarations as an "Insured Location" as to which the Parkers had property damage coverage.

Farm Bureau does not explain what the policy meant by a "'business' indicated by class in the Declarations." Farm Bureau concedes the policy did not define or explain what constitutes a class of business, but argues that only a "Rental Dwelling" and not "D&B Farms" can reasonably be considered as describing a class. Dkt. 89 at 14. That reasoning is unpersuasive. There is no mention in the Declarations of a rental dwelling *business,* and the Declarations expressly list D&B Farms as a named insured. Nowhere in the Declarations or policy was there a simple statement or explanation informing the

10

insureds that the Business Liability coverage applies only to the Parkers' rental dwelling business. Nor was there a statement that such coverage does not apply to the farming operations of D&B Farms. A reasonable insured could construe the Declarations and the remainder of the policy as providing Business Injury Liability coverage to D&B Farms as one of the named insureds. *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283, 286 (1991) (a contract is ambiguous if it contains provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language).  As Judge Learned Hand once observed, "An underwriter might so understand the phrase, when read in its context, but the application was not to be submitted to underwriters; it was to go to persons utterly unacquainted with the niceties of life insurance, who would read it colloquially. It is the understanding of such persons that counts…." *Gaunt v. John Hancock Mut. Life Ins. Co.*, 160 F.2d 599, 601 (2nd Cir.), *cert. denied*, 331 U.S. 849 (1947).

"If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise the policy will be liberally construed in favor of the insured." *American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1058-59, 179 P.3d 1104 (2008) (cite omitted). It would have been a simple matter to state in the policy which insured had which coverage. The language of this policy could lead a reasonable insured to believe that it provided D&B Farms with Business Liability coverage. Given this ambiguity, the court is directed by Kansas law to adopt the construction favorable to the insured. This is true even if the court considers the circumstances under which the Parkers added the various elements of coverage to their

11

policy and the fact that Farm Bureau sent bills itemizing Business Liability coverage for the rental dwelling. Nothing in those documents or the parties' conduct negates the fact that, regardless of why and how the Parkers initially sought Business Liability coverage, the policy language itself can reasonably be construed to provide such coverage for D&B Farms as well as for the Parkers' rental dwelling business.

      B. Personal Injury/Advertising Injury.

The Business Liability module provided coverage for a business injury caused by an "offense" to which the coverage applies, including an "advertising injury." A covered advertising injury includes one caused by the offense of "misappropriation of advertising ideas" and "[i]nfringement of copyright, title or slogan." Dkt. 84-10 at 55. The court concludes that Brett Parker's advertisement of Fuller seed wheat without the authorization of the certificate holder, as alleged in the KWA suit, could reasonably be considered an advertising injury caused by an "infringement of title" within the meaning of the policy.

The PVPA gave KWA the exclusive right to market Fuller wheat, to offer it for sale, and to sell it. An examination of the KWA complaint shows that the claims in that suit were based at least in part on Parker's advertisement of Fuller seed wheat. *See KWA Complaint*, Dkt. 84-3 at 7, ¶¶ 24, 40 ("[O]n September 24, 2013, Parker advertised for sale the Fuller variety by variety name. Such advertisement represents marketing, offering for sale, and soliciting an offer to buy, in violation of the PVPA."). The fact that Parker advertised the Fuller variety for sale, in and of itself, constituted a compensable infringement of KWA's exclusive rights under the PVPA. The Farm Bureau policy does

not specifically define the term "title," but Parker's advertisement can reasonably be considered an infringement of title within the mean of the clause. KWA's bundle of rights with respect to Fuller wheat can reasonably be considered a legal "title" that was infringed upon by the advertisement. Owning an exclusive right to advertise, offer for sale, and sell a variety of plant is an extensive bundle of rights that is at least commensurate with the copyright and trade dress rights otherwise protected by this clause.

Farm Bureau maintains that courts, including the Tenth Circuit, have rejected claims that the phrase "copyright, title or slogan" provides coverage for a broad range of intellectual property infringement. Dkt. 86 at 41 (*citing DISH Network Corp. v. Arch Specialty Ins. Co.*, 659 F.3d 1010 (10th Cir. 2010)). It argues that "title" in this clause does not mean infringement of any legal right, but instead refers to "the name of a literary or artistic work, as opposed to the ownership of an invention." Dkt. 86 at 42 (*citing U.S. Test, Inc. v. NDE Environmental Corp.*, 196 F.3d 1376 (Fed. Cir. 1999)). It further argues the KWA complaint did not allege an infringement of title, because it only alleged that "the Parkers had infringed on [KWA's] right to exclusive control under the PVPA over the advertisement and sale of Fuller seed wheat – not that the Parkers had infringed on its right to generally use the 'Fuller' name." Dkt. 86 at 42.

Farm Bureau's citation of various cases, most of which involve patent claims, is unavailing. The *DISH* case cited above turned on the meaning of "misappropriation of advertising ideas." *DISH*, 659 F.3d at 1017. That provision is not at issue here, as the court bases its ruling on coverage for an advertising injury caused by "infringement of

title." It bears pointing out, moreover, that *DISH* rejected a central premise of the *U.S. Test* case also cited by Farm Bureau – i.e., that "it is unequivocally clear from the plain language of this definition that the parties did not intend that patent infringement be covered under the policy as a form of 'advertising injury'" because "[t]he word 'patent' is notably absent from the enumerated offenses, while other forms of intellectual property infringement, namely copyright, are specifically included in the numerated offenses." *U.S. Test*, 196 F.3d at 1380-81. *DISH* accurately observed that "to categorically exclude patent coverage merely because a policy enumerates other intellectual property violations would conflict with the principle … that exclusions are strictly construed against the insurer and 'must be written in clear and specific language.'" *DISH*, 659 F.3d at 1020 (citation omitted). While the provision at issue here is not an exclusion, it is similarly ambiguous with respect to whether a violation of a PVPA certificate holder's exclusive rights could reasonably be considered an "infringement of title" within the meaning of Farm Bureau's policy.

The court likewise rejects the conclusion in *U.S. Test* that the term "title," when grouped with "copyright" and "slogan," must be construed to mean "the name of a literary or artistic work as opposed to the ownership of an invention." *U.S. Test*, 196 F.3d at 1381. While it is possible to narrow the ordinary meaning of "title" by inferring a limitation from its surrounding terms, it is also possible to infer a broader meaning from the fact that an insurer promised to cover infringement of several different types of intellectual property. *See also Webster's Dictionary* (defining "title" in part as "that which constitutes a just cause of exclusive possession; that which is the foundation of

ownership of property, real or personal; a right"); *Black's Law Dictionary* (title is "the union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property"). The critical point here is that a reasonable insured cannot be expected to resort to *noscitur a sociis* (a word is known by the company it keeps) or competing rules of construction to divine the meaning of a policy. Again, Farm Bureau could have written the limitation it now suggests is part of the policy. It did not do so. Because an advertisement that violates PVPA rights can reasonably be considered an "infringement of title," the court construes the ambiguity against Farm Bureau.

The court notes that in many if not most of the cases cited by Farm Bureau, the question addressed was not the meaning of "title," but whether advertising an infringing product was in fact the cause of the claimant's injury. Courts have frequently held that advertising and then selling a product that infringes a patent does not constitute an "advertising injury" within the meaning of this type of clause. The reason for most of these holdings is that the *sale* of an infringing product, rather than its advertisement, is ordinarily the proximate cause of the injury. *See e.g., Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 988 (10th Cir. 1998) ("a claim of patent infringement based upon the sale of an infringing product does not occur 'in the course of advertising activities,' and thus does not give rise to an 'advertising injury'"). But in the instant case, Parker's advertisement of Fuller wheat for sale, standing alone, was an infringement of KWA's exclusive right to market Fuller wheat. Parker thus caused an "advertising injury" within the meaning of the policy by infringing on KWA's title.

In sum, the court finds that D&B Farms was entitled to coverage for the KWA claim to the extent it was based on an advertising injury caused by Brett Parker's advertisement of Fuller wheat seed. The court makes no finding regarding the extent to which KWA's claimed damages fell within that coverage. Although it stands to reason that the bulk of KWA's damages were likely associated with Parker's unauthorized sale and distribution of Fuller wheat – acts not covered by the policy – rather than by Parker's unauthorized advertisement of the wheat, that issue was not raised on summary judgment, and at any rate appears to be a question of damages to be decided by the finder of fact.

C. Duty to Defend.

Under Kansas law, an insurer has a duty to defend whenever there is a potential of liability under the policy. *MGM, Inc. v. Liberty Mut. Ins. Co.*, 253 Kan. 198, 202, 855 P.2d 77 (1993) (*citing Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973)). "The insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint and considering any facts brought to its attention or which it could reasonably discover." *Id*. "The possibility of coverage may be remote, but it if it exists the [insurance] company owes the insured a defense. The possibility of coverage must be determined by a good faith analysis of all information known to the insured or all information reasonable ascertainable by inquiry and investigation." *MGM, Inc.*, 253 Kan. at 202 (*quoting Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 710, 732 P.2d 741 (1987)).

16

For the reasons indicated previously, the court concludes there was a potential for liability under the policy. The KWA suit included a claim that potentially fell within D&B Farms' policy coverage for an advertising injury. Under the defense provision of the policy, Brett Parker was entitled to a defense as to that claim.

**IT IS THEREFORE ORDERED** this 9th day of March, 2017, that plaintiffs' Motion for Partial Summary Judgment (Dkt. 84) is GRANTED and that defendant's Motion for Summary Judgment (Dkt. 85) is DENIED.

s/   J. Thomas Marten
Chief United States District Judge