IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRETT PARKER and
D&B PARKER FARMS, LLC,

                Plaintiffs,

v.                                            Case No. 15-1204-JTM

FARM BUREAU PROPERTY & CASUALTY
INSURANCE COMPANY,

                Defendant.

**MEMORANDUM AND ORDER**

After plaintiffs were sued by the Kansas Wheat Alliance (KWA) for wrongfully advertising, selling, and distributing a variety of wheat for which the KWA had exclusive rights under the Plant Variety Protection Act (PVPA), plaintiffs tendered the claim to Farm Bureau. Plaintiffs had an insurance policy that covered (among other things) liability for "advertising injury." Farm Bureau denied coverage and refused to defend the claim. Plaintiffs then settled the KWA suit and filed this action seeking reimbursement. A jury heard the evidence from September 19, 2017, to September 21, 2017, and found plaintiffs had reasonably settled a claim covered by the policy for $60,000 and incurred attorney fees of $26,784.27 in doing so. The court then entered judgment for plaintiffs in the amount of $86,784.27. (Dkt. 119).

The matter is now before the court on Farm Bureau's Motion for New Trial or for Judgment as a Matter of Law (Dkt. 123) and on plaintiffs' Motion for Attorney Fees (Dkt. 122).  In the first motion, Farm Bureau argues the verdict was against the weight

of the evidence. In the second motion, plaintiffs argue they are entitled to attorney fees

under K.S.A. § 40-908 or § 40-256 in the amount of $431,670.00.

### I. Motion for New Trial (Dkt. 123)

Farm Bureau moves for a new trial under Fed.R.Civ.P. 59(a)(1)(A) or for

judgment as a matter of law under Fed.R.Civ.P. 50(b). It argues the evidence

demonstrated that the settlement between plaintiffs and the KWA was made to resolve

injuries caused by plaintiffs' sale and distribution of Fuller seed wheat, not to resolve a

claim for wrongfully advertising the seed. Farm Bureau argues the evidence is

incompatible with the judgment and with the court's ruling that the policy provided no

coverage for claims of wrongfully selling or distributing the seed.[1] Farm Bureau asks

the court to grant one of several alternative remedies including a judgment in its favor,

remittitur of the damages to $7,000-$8,500, or a new trial. (Dkt. 123 at 12-14).

Judgment as a matter of law under Rule 50 may only be granted when "a party

has been fully heard on an issue during a jury trial and the court finds that a reasonable

jury would not have a legally sufficient evidentiary basis to find for the party on that

issue." Fed. R. Civ. P. 50(a); *In re: Cox Enterprises, Inc. v. Cox Communications, Inc.*, 871

F.3d 1093, 1096 (10th Cir. 2017). In other words, judgment as a matter of law is

appropriate "only if the evidence points but one way and is susceptible to no reasonable

inferences which may support the nonmoving party's position." *In re: Cox Enterprises*,

871 F.3d at 1096 (citations omitted).

---

[1] To the extent Farm Bureau asks the court to reconsider its summary judgment order (Dkt. 123 at 13), the court rejects those arguments for the reasons stated in the court's summary judgment ruling.

A motion for new trial under Rule 59(a) may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court…." Fed. R. Civ. P. 59(a)(1)(A). Such motions, which are committed to the discretion of the trial court, are not regarded with favor and are granted only with great caution. *Paradigm Alliance, Inc. v. Celeritas Technologies, LLC*, 722 F.Supp.2d 1250, 1258 (D. Kan. 2010). They are generally granted only "when the court believes the verdict is against the weight of the evidence, prejudicial error has occurred, or substantial justice has not been done." *Feldt v. Kan-Du Const. Corp.*, No. 12-1064-MLB, 2015 WL 1523905, * (D. Kan. Apr. 3, 2015).

Under the instructions, plaintiffs were entitled to recover any sums they reasonably paid to settle the claim by KWA that they wrongfully advertised Fuller seed wheat, as well as any attorney fees incurred in defending that claim. The jury was instructed that plaintiffs were "not entitled to recover any sums they paid to settle other claims, or for attorney fees or expenses they paid for defending or settling other claims." (Dkt. 115 at 15). The jury was further told it was a question of fact for them to determine from the evidence the extent to which the settlement was to resolve a claim of wrongfully advertising the seed as opposed to resolving other claims, and that the extent to which the settlement was for the advertising claim "depends on how the parties to the settlement viewed the relative merits of the claims at the time of settlement." (*Id*. at 16).

The jury's conclusion that the entire $60,000 was paid to resolve the wrongful advertising claim was not outside the bounds of reason. The KWA complaint included

allegations that plaintiffs wrongfully advertised Fuller seed wheat in violation of KWA's rights under the PVPA and thereby caused harm to KWA. As the court noted on summary judgment, plaintiffs' "advertisement of Fuller wheat for sale, standing alone, was an infringement of KWA's exclusive right to market Fuller wheat," and plaintiffs "thus caused an 'advertising injury' within the meaning of the policy…." (Dkt. 95 at 15). The jury heard Brett Parker's testimony that the KWA did not offer him a breakdown of its claimed damages or distinguish between damages from advertising the seed and selling or distributing it, and that in Parker's mind "it all triggered off of the advertising it…." Nothing in the Parker-KWA settlement agreement or consent judgment indicated any particular breakdown or allocation of damages.

The jury also heard testimony that Parker obtained the Fuller seed wheat from Steve Hirt, that Hirt never advertised the seed, and that the KWA sued Parker but did not sue Hirt. The jury could reasonably draw an inference that Parker's advertising of the seed was a factor in the KWA seeking damages from him.[2]

The jury also heard testimony from Daryl Strouts, a KWA witness, who said the KWA was not seeking and did not suffer any damages from the advertisement. But the KWA's complaint against plaintiffs can be construed as seeking damages from the advertisement. Moreover, Strouts testified that his job included monitoring advertisements for protected varieties of wheat, and that when he found such an ad he would forward it to the KWA's attorney for action, as he did with plaintiffs'

---

[2] Farm Bureau asserts the inference "is not true" because the KWA agreed not to sue Hirt as part of its settlement with Parker. (Dkt. 123 at 17, n.5). But the fact remains that the KWA could have, but agreed not to, sue Hirt, while it did sue Parker.

advertisement. As a result of the advertisement, the KWA commenced an undercover buy of Fuller seed from plaintiffs and subsequently brought the lawsuit alleging, among other things, a violation of the PVPA based upon the advertisement. Moreover, despite Strouts' testimony that the advertisement played no part in the KWA settlement, an attorney for the KWA stated in a February 2014 letter (Exh. 25) that, insofar as the amount of any settlement payment was concerned, the KWA had to recover its substantial costs of investigation and legal fees because Parker "was publically advertising federally protected varieties of wheat seed for sale, and [KWA] has a legal duty to police infringement of its intellectual property."

The court instructed the jury that the amount of the settlement attributable to the advertising claim was a question of fact for it to determine. The instructions placed the burden of allocating the settlement on the plaintiffs, although some case law suggests the burden should be on the insurer in such circumstances.[3] The jury apparently resolved the question by viewing the evidence and all reasonable inferences in plaintiffs' favor, as was its prerogative. It may have viewed the settlement of the advertising claim as effectively inseparable from the other claims. Farm Bureau cites no particular evidence or fact precluding the jury's finding. Regardless of how another jury might have weighed the evidence, this jury's conclusion is not without support in the

---

[3] Farm Bureau made no request of the Parkers to seek an allocation of settlement damages during the KWA suit. Although the general rule is that the burden of allocation is on the insured, "[s]ome courts … have held that if an insurer was responsible for the absence of an ability to make an allocation of a settlement, the insurer is liable for the entire settlement if an allocation cannot be made. In addition, some courts have held that if the insurer breached its duty to defend, the burden will be on the insurer to make the allocation." Allan D. Windt, 2 *Insurance Claims and Disputes* § 6:31 (6th ed.) (footnotes and citations omitted).

record, and the court concludes the verdict does not warrant a new trial, a judgment in Farm Bureau's favor, or any other relief. The matter was submitted to a jury because the degree to which the KWA settlement was based upon the advertising claim presented a genuine issue of fact and because the parties could not agree upon an allocation of the settlement.

Farm Bureau additionally argues the judgment should be reduced to $7,000 or $8,500, which it contends are the amounts for which plaintiffs could have settled the KWA suit but for plaintiffs' failure to name the suppliers and recipients of the Fuller wheat. The court expressed some concern about that issue prior to trial (Dkt. 121 at 6), but ultimately concluded the jury "can consider that evidence in determining whether the eventual settlement requiring Parker to pay $60,000 was reasonable [and] whether he failed to mitigate his damages…." (*Id.* at 8). Plaintiffs' assertion at trial that he "couldn't" agree to the KWA's initial settlement offers appeared to be based on the negative consequences he would suffer by exposing his neighbors to liability, rather than on any factual or legal barrier to making the settlement, but again, the court concludes that the reasonableness issue was for the jury, rather than the court, to resolve. The court cannot substitute its judgment for the jury on what is essentially a factual question.

Farm Bureau also seeks a new trial based on what it contends was "the plaintiffs' pervasive and misleading arguments regarding insurance coverage." (Dkt. 123 at 14-18). The argument is based in part on evidentiary rulings by the court and in part on arguments by plaintiffs and their counsel that Farm Bureau treated them unfairly, with

6

the trial allegedly becoming "a referendum on coverage and Farm Bureau's actions, not on the cause of KWA's injuries." (*Id.* at 17).

A new trial based upon an erroneous evidentiary ruling is warranted only if the error prejudicially affected the substantial rights of a party. *See Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998). Farm Bureau fails to show any specific error or prejudice from the court's rulings. Allowing the jury to hear that plaintiffs paid their premiums and "were looking for Farm Bureau to support them" did not deprive Farm Bureau of a fair trial. Nor has Farm Bureau shown a significant likelihood of prejudice or confusion from the admission of the insurance policy or the coverage letters between the parties. Plaintiffs testified they believed Farm Bureau's denial of coverage and a defense was unjustified and that it put significant financial pressure on them to settle the KWA's allegations. The policy and coverage documents thus had some relevance to the jury's determination of whether the settlement made by plaintiffs was reasonable. *See e.g., Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983, 986 (N.D. Ill. 2007) (in determining whether the amount of a settlement was reasonable, one must consider that the insureds had an incentive to settle rather than face extensive attorney fees).

As for alleged misleading statements by plaintiffs, the only concrete example cited by Farm Bureau concerns a comment by plaintiffs' counsel in closing argument that the court had already ruled that plaintiffs did not intentionally cause any injury. That comment was misleading, as it (apparently) concerned a dispositive motion in

which the court was obligated to assume the truth of the allegations in the complaint.[4] Such a ruling at the pretrial stage obviously did not constitute an adjudication of Brett Parker's state of mind or intent. But Farm Bureau did not contemporaneously object to the comment,[5] and the court concludes it did not constitute plain error. Not only is it doubtful that such a stray comment could have altered the jury's verdict, but the court instructed the jury that statements of the attorneys were not evidence in the case. In sum, Farm Bureau has shown no grounds for a new trial.

## II. Motion for Attorney Fees (Dkt. 122)

Plaintiffs move for attorney fees under K.S.A. § 40-256 and § 40-908. Farm Bureau argues such fees are not available under either provision. Even if fees could be awarded, Farm Bureau argues the $431,670 sought by plaintiffs is "patently unreasonable" and consists largely of claims for work on unsuccessful and unfounded claims such that the request should be denied.

The court need not address § 40-256 because it concludes plaintiffs are entitled to recover attorney fees under § 40-908. As Farm Bureau acknowledges, the Kansas courts have given this statute an exceptionally broad construction. And in a case such as this arising under the court's diversity jurisdiction, the court is obligated to apply the substantive law of Kansas, including § 40-908, as construed by the Kansas Supreme Court. *See Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th

---

[4] *See* Dkt. 17 at 6 ("Under the allegations in the complaint, Parker did not intend his sales of wheat to cause injury.")

[5] Plaintiffs' counsel made a similar assertion while objecting to a Farm Bureau question about KWA's damages. (Dkt. 125 at 155). The court overruled that objection after defense counsel pointed out that plaintiffs were referring to the ruling on the motion to dismiss. (*Id*).

Cir. 1997) (recovery of attorney fees in diversity suit is substantive and governed by state law).

K.S.A. § 40-908 provides in part that in an action in which judgment is rendered against an insurance company "on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee…." Farm Bureau contends the provision should not apply because plaintiffs' claim is based on liability coverage, rather than property damage, but the Kansas Supreme Court rejected a similar argument in *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 137 P.3d 486 (2006). Farm Bureau argued in that case "that the statute applies only to property insurance claims and thus, is inapplicable to the present liability claim." *Id.*, 137 P.3d at 497. The Kansas Supreme Court reiterated that the policy, rather than the type of loss, triggers application of the statute. The judgment in *Lee Builders* "was based on an insurance policy that insured certain property against loss by fire, lightning, windstorm, and hail," and thus the district court correctly awarded attorney fees notwithstanding that the claim at issue was based on the policy's liability component. *Id.* at 496-97 (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 953 P.2d 1027 (1998) ("The policy coverage controls, not the actual type of loss. If the loss is covered by a policy which insures against fire, tornado, lightning, or hail, then the statute applies regardless of whether the actual loss occurred by one of those named causes or some other cause covered by the same policy.")).

Plaintiffs obtained a judgment against Farm Bureau on a policy that included coverage for property damage caused by fire, lightning, and hail. That same policy included the liability coverage under which plaintiffs prevailed at trial. The judgment exceeds any tender offered by Farm Bureau prior to the action. Under these circumstances, Kansas law provides that plaintiffs are entitled to recover "a reasonable sum as an attorney's fee for services in such action." *See* K.S.A. § 40-908.

Determining a reasonable attorney's fee depends primarily on calculating the lodestar, which is the reasonable number of hours spent on litigation multiplied by a reasonable hourly rate. *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102-03 (10th Cir. 2010). After determining the lodestar, the court considers the factors in Kansas Rule of Professional Conduct 1.5(a) to determine whether any adjustments are necessary. The relevant factors under Rule 1.5(a) are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

At the outset the court concludes the hourly rates requested by plaintiffs are within market norms for this area and are reasonable. But the court concludes plaintiffs have failed to show that prosecuting this action reasonably required anywhere near the

10

2,193 hours of work claimed.[6] The particular coverage provision at issue in this case and

plaintiffs' underlying liability (for violation of the PVPA) could both be characterized as

somewhat unusual, but the case was still a conventional coverage dispute and was not

complex. Plaintiffs successfully defended against a straightforward motion to dismiss

that relied on a policy exclusion for intentional acts. The court denied that motion based

upon the complaint's allegation that plaintiffs' actions were not intentional. (Dkt. 17 at

6). Some discovery was necessary with respect to the KWA suit but, again, no showing

is made that discovery was unusual or complex. Moreover, plaintiffs were represented

by the same law firm both in the KWA litigation and this case, such that counsel should

have been familiar with the KWA suit and accompanying legal issues. The court notes

that billings from the KWA suit show that plaintiffs' counsel engaged in significant

research in that action concerning the PVPA, yet plaintiffs' counsel now seeks

reimbursement for hundreds of additional hours of research including a significant

number relating to the PVPA. *See* Trial Exh. 8.

Both sides filed motions for summary judgment. The scope and depth of issues

on summary judgment were routine insofar as insurance litigation is concerned. The

court found plaintiffs were entitled to coverage insofar as the KWA settlement was

based on an advertising injury (but not otherwise) and that plaintiffs were entitled to a

defense on the KWA claim. (Dkt. 95).  There was nothing complex about these issues,

but plaintiffs' claim for legal fees relating to summary judgment alone (more than 260

---

[6] According to plaintiffs, the figure represents 1880.7 hours of attorney time and 312.7 hours of paralegal/other time. (Dkt. 129 at 13). The court has been hampered in its review by the presentation of 85 pages of billing records with no breakdown of hours spent by each person or by the discrete tasks performed.

hours of work) appears to exceed the $60,000 total plaintiffs paid to settle the KWA claim. In the court's experience, this represents significantly more hours than are typically expended for a conventional summary judgment motion, without any showing that expenditure of such time was reasonably necessary. Plaintiffs also say they spent "significant time and effort" preparing for mediation, but do not explain why such extensive preparation was necessary when mediation followed discovery and summary judgment.

In pretrial evidentiary rulings, the court granted Farm Bureau's motion to exclude evidence relating to various components of plaintiffs' claimed damages, including the $140,000 portion of the KWA consent judgment plaintiffs were not obligated to pay, and a claim for over $500,000 in profits plaintiffs theorized they lost as a result of Farm Bureau not defending the KWA action. The latter claim, which was highly speculative, appears to have been a significant factor in the expenditure of substantial amounts of time by plaintiffs' counsel in research, briefing, and other activities above and beyond what is customarily expended by learned counsel in similar coverage disputes. There was nothing complex or novel about this case or the trial itself, which took only two-and-a-half days to complete, involved only four witnesses (including Brett Parker, his wife, and their former attorney), involved no expert testimony, and which only required the jury to determine the amount of money plaintiffs reasonably paid to settle and defend the KWA advertising injury claim.

The billing records submitted by plaintiffs include hundreds of hours expended on research, conferencing, and other matters relating to expert witnesses and to a theory

of lost profit damages that the court excluded from trial. The court finds these hours were not reasonably expended to obtain the judgment and do not merit compensation. The exact number of hours attributable to these matters is impossible to ascertain from the records submitted. Plaintiffs assert without adequate explanation that the figure is 329 hours (Dkt. 137 at 6) but the court concludes the figure is likely significantly higher. In the court's experience, billing over $400,000 for 2,000 hours of legal work typically occurs only in the context of complex and extended litigation, not in a dispute over coverage of a $60,000 judgment. The records indicate that hundreds of hours were expended on expert matters and related research. The reasonableness and necessity of these hours in relation to the success achieved in the litigation has not been substantiated. Based on its assessment of the case and the records submitted, the court concludes that a 30% reduction in total hours should be applied for activities related directly or indirectly to experts and to lost profits or other non-compensable damage issues. *Cf. Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1204 (10th Cir. 1986) (general reduction warranted for time spent on unsuccessful damage theory).

Aside from those issues, there are other factors warranting a reduction in the hours claimed by plaintiffs. The billing records show a significant amount of time attributable to communication, correspondence, and conferencing between members of the same firm. There is nothing improper about inter-office conferencing of this sort, and such time may be compensable, but not if the time is excessive or if the records fail to show the time is reasonable. *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 616 F.3d 1098, 1105 (10th Cir. 2010). The court concludes plaintiffs have failed to show the

13

reasonableness of a significant portion of this time. Entries for "email exchanges," "telephone conferences," and "correspondence" with members of the same firm about various general topics are not sufficient to show that the involvement of multiple professionals was necessary and that the work was not duplicated. A significant number of entries appear to be for "review" of work done by others. *See Anchondo*, 616 F.3d at 1105 (multiple attorneys may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer). Also, plaintiffs have failed to demonstrate the reasonableness of the hours claimed for research and briefing in what was not a complicated legal matter, particularly in view of the prior legal research and discovery already conducted by the same law firm in the KWA suit. Counsel for plaintiffs have submitted their own declaration that the fees are reasonable (Dkt. 129-1), but they include no discussion of fees charged in similar cases, and plaintiffs have not submitted any affidavit from an independent expert opining on the reasonableness of the hours claimed. Based on the foregoing factors, the court concludes that an additional reduction of 15% of the total hours claimed is warranted.

Finally, the court concludes an additional reduction of 10% of total hours is necessary to render the time spent and resulting fee reasonable. It is evident to the court that the hours set forth have not been subjected to the exercise of billing judgment. Plaintiffs assert that the total bill of $431,670 has already been reduced "by more than $35,000." (Dkt. 129-1). Plaintiffs do not explain that reduction. At any rate, the records now before the court show what appear to be full and unreduced charges for time spent

14

reviewing materials, conducting background research, travel time, researching court procedures and other matters experienced counsel are expected to be familiar with, and more than 250 hours for work by paralegals in a non-complex case. The records indicate that nine different attorneys (and seven paralegals or other time-keepers) worked on the case, raising concerns over whether charges were included for time spent by different individuals to familiarize themselves with the case. "Billing judgment consists of winnowing hours actually expended down to hours reasonably expended." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005). "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party…." *Case v. Unified School Dist. No. 233, Johnson County, Kansas*, 157 F.3d 1243, 1250 (10th Cir. 1998). Proper billing judgment requires attorneys to make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary…." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). While any client would appreciate zealous representation of the type reflected in counsel's billings, standard billing practice dictates a reduction of excessive charges that are out of proportion to the scope of the lawsuit. Such a general reduction is necessary here to reflect proper billing judgment.

The court has considered the factors in Kansas Rule of Professional Conduct 1.5(a) and concludes they warrant no increase or reduction of hours beyond what has been discussed above. In brief, the court notes that the case was not complex; that plaintiffs' counsel performed with skill and provided excellent representation; that no evidence shows acceptance of the case precluded plaintiffs' counsel from accepting

15

other work; that the requested fee substantially exceeds the fee typically charged for similar work in this area; that plaintiffs' counsel obtained highly successful results; that the experience and skill of plaintiffs' counsel in the case was commendable; and that counsel's fee arrangement with plaintiffs depended primarily upon the recovery of statutory attorney fees in this action. On balance, the factors warrant no further adjustment.

Based on the above findings, the court concludes that plaintiffs are entitled to recover attorney fees of $194,251.50, representing 45% of the total time and fees claimed in Dkt. 129-1. The court finds that such a fee is reasonable under all of the circumstances, including the fact that Farm Bureau made no tender of any insurance coverage, forcing plaintiffs to sue to recover what was due under their policy.

**IT IS THEREFORE ORDERED** this 22nd day of January, 2018, that defendant's Motion for New Trial or Judgment as a Matter of Law (Dkt. 123) is DENIED. Plaintiffs' Motion for Attorney Fees (Dkt. 122) is GRANTED in the amount of $194,251.50.


                    ____s/ J. Thomas Marten_____
                    J. THOMAS MARTEN, JUDGE